**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lawrence Elliot MARKEN, Defendant-Appellant.**

**No. 71–1048.**

United States Court of Appeals, Ninth Circuit.

March 6, 1972.

---

J. Kent Steele (argued), of Miller, Glassman & Browning, Beverly Hills, Cal., for defendant-appellant.

David Curnow, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., David R. Nissen, Asst. U. S. Atty. & Chief, Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before KOELSCH, DUNIWAY and CHOY, Circuit Judges.

DUNIWAY, Circuit Judge:

Marken was convicted under two counts of an indictment. One count charged conspiracy to violate 26 U.S.C. § 4705(a); the other charged a sale of cocaine in violation of that section. We reverse.

1. *When must the order required by § 4705(a) be obtained?*

There was but one transaction. Marken negotiated a sale of cocaine to undercover agents. It was agreed that the agents were to go with Marken to a "drop site," where Marken was to point out a car to agent Warren. The cocaine was to be located under the front seat of that car, and Warren was to go to the car and get it. If satisfied with it, he was to signal to agent Egbert, who had the money and was to pay Marken. The arrangement was carried out. However, according to Marken's testimony, when Warren gave the signal Egbert struck Marken on the head, knocking him unconscious. The agents denied this, but that fact is immaterial because we are considering Marken's theory of defense. See United States v. Shewfelt, 9 Cir., 1972, 455 F.2d 836. Marken's theory was that this prevented his demanding from Egbert the order required by § 4705(a). The court permitted Marken's testimony, but declined to let his counsel argue this theory to the jury. The court's theory apparently was that the order had to be obtained before the delivery of the narcotic. It is not claimed that Marken ever demanded or received the order.

Here is the pertinent language of § 4705(a):

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

We are required to construe this criminal statute strictly, and to resolve ambiguity in favor of lenity. United States v. Caldes, 9 Cir., 1972, 457 F.2d 74.

The key phrase is "in pursuance of"; the statute does not say that the order must be received "before" the sale, etc. The phrase "in pursuance of" has been variously defined. For examples

"The phrase has been said to have a restrictive interpretation, implying that what is done is in accordance

with an instruction or direction; and has been defined as meaning according to; in accordance with; in prosecution or fulfillment of. It has been held equivalent to 'by virtue of,' . . . 'in conformity with,' and 'pursuant to.'" [Footnotes omitted.]

None of these definitions requires that the order be received first. We think that there would be compliance with § 4705(a) if the order were demanded and received in the course of, rather than before, the transaction. Thus, there would have been compliance here if, when Warren gave the signal, Marken had asked for the form and Egbert had handed it to him with the money. It is the substance of compliance with which the statute deals, not the timing of the passing of a piece of paper. This is not to say that if the jury had believed Marken it would have been required to acquit him. It might still have inferred that he had no intention of asking for the form or that he knew that if he did ask, he would not get it and would still have gone through with the sale. All that we hold is that Marken's theory is not precluded by the statute.

As authority for its interpretation of § 4705(a) the government cites United States v. Minor, 1969, 396 U.S. 87, 90 S. Ct. 284, 24 L.Ed.2d 283 and United States v. Wong, 9 Cir., 1970, 425 F.2d 1077. Neither case is authority for the government's position. In each, the court's analysis and holding were focused on the question whether the requirements of § 4705(a) violated the defendant's Fifth Amendment privilege against self-incrimination. (Minor, 396 U.S. at 91–94, 90 S.Ct. 284; Wong, 425 F.2d at 1078). Neither court addressed itself to the specific question raised in this appeal.

2. *Did the court err in responding to the jury's questions?*

After the jury retired, the court received two notes stating written questions from the jury. Neither Marken nor his counsel was notified; neither was called back to the courtroom, nor was the jury recalled. The trial judge simply wrote answers to the questions on the notes and returned them to the jury.

These are the questions and answers:

"Do all parties of a conspiracy have to know or be aware of all other parties of the conspiracy during the time of the conspiracy?"

Answer: "No".

"At what time does the law as written state when the permit for x-change of cocaine be asked for by the seller? Before, during or after the exchange or barter of the narcotic (cocaine)?"

Answer: "The answer to your question is before the exchange."

We have no doubt that it was error for the court to instruct the jury without the knowledge, much less the presence, of Marken and his counsel, Shields v. United States, 1927, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787; Bustamente v. Eyman, 9 Cir., 1972, 456 F.2d 269; Gagliardo v. United States, 9 Cir., 1966, 366 F.2d 720; Ah Fook Chang v. United States, 9 Cir., 1937, 91 F.2d 805. It is contended that the error was harmless. However, in view of what we have already said, the answer to the second question was not harmless. We therefore need not consider the answer to the first question. We assume that the same mistaken procedure will not be repeated at a second trial.

Reversed and remanded for a new trial.