James HOSKINS, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4534.

Supreme Court of Wyoming.

July 21, 1976.

Rehearing Denied Sept. 13, 1976.

See 553 P.2d 1390.

Gerald M. Gallivan, Director, and Roy Jacobson, Student Intern, Wyoming Defender Aid Program, Laramie, signed the brief and Gerald M. Gallivan, Roy Jacobson and Louis A. Mankus, Cheyenne, appeared in oral argument on behalf of appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Donn J. McCall, Legal Intern, Cheyenne, signed the brief and Donn J. McCall and Robert L. Bath, County Atty., Green River, appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and Mc-CLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, J., delivered the opinion of the court, in which GUTHRIE, C. J., and THOMAS, J., joined. GUTHRIE, C. J., filed a separate concurring opinion. ROSE, J., filed a dissenting opinion in which McCLINTOCK, J., joined.

The appellant-defendant was tried before a jury on a charge of grand larceny. He was found guilty and sentenced. Amongst the instructions given by the trial judge before the jury's retirement to deliberate was the following:

"In order to return a verdict, each juror must agree thereto. The jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to your individual judgments. Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors. In the course of your deliberations a juror should not hesitate to

reexamine his or her own views and change his or her opinion if convinced that it is erroneous. No juror should surrender his honest conviction as to the right or effect of the evidence solely because of the opinion of his or her fellow juror, or for the mere purpose of returning a verdict. However, in the course of your deliberations, a juror should not hesitate to examine his or her own views and change his or her opinion if convinced that it is erroneous."

After the jury retired and had been out for about six hours, they sent a note to the trial judge, "We cannot reach a verdict due to lack of evidence." While the transcript of trial proceedings does not show exactly what occurred immediately following receipt of the note nor the presence of all trial counsel, in an appendix to the State's brief, appears the affidavit of Ms. Nena R. Stafford,[1] stating that she was present during the entire trial, that regular trial counsel for the defendant, following closing argument, asked her to stand by and appear as counsel for defendant during jury deliberation and their decision, because he was returning to Rawlins, that she was present in chambers when the court was advised of the jury problem and present when the court discussed the matter with them. This will be examined later in this opinion, with other circumstances in that connection.

The trial judge then gave the following instruction to the jury:

"Ladies and gentlemen, it is our understanding that you are having difficulty reaching an agreement. As you know, this is an important case to the defendant and the State. This trial has been expensive even though short. If you fail or are unable to agree, of course, there will be the necessity of choosing another jury, twelve people, no more intelligent than you are, no more impartial, or no more competent. They have [sic] the same responsibility, under the same oath, who [sic] would hear the evidence with the same attention with an equal desire to arrive at the truth.

"You have already been instructed that in order to return a verdict, each juror must agree thereto. The jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to your individual judgments. Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors. In the course of your deliberations a juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced that it is erroneous. However, no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors, or for the mere purpose of returning a verdict. The Court requests you to deliberate further in an atmosphere of mutual deference and respect, giving due consideration to the views of your fellow jurors in the knowledge that your verdict must reflect the views of all.

"Your attention is specifically called to all of the other instructions given to you in this case, including those relating to

---

1. The full text of the affidavit follows:
"That I was present in the Courthouse on December 11, 1974 during the trial of the State of Wyoming-vs-James Hoskins, Criminal Action # 3294.
"That following arguments of counsel, the case went to the jury at 4:00 o'clock P.M. on said December 11, 1974. At that time, Attorney C. L. Bates advised that he was returning to Rawlins, Wyoming and asked me to stand by and appear as counsel on behalf of the defendant, James Hoskins, dur-

ing the jury determination and their final decision.
"I was present in the Judge's chambers at the Courthouse in Green River, Wyoming when the Court was advised by the jury that it was having some difficulty in reaching an agreement. Judge Kenneth G. Hamm advised counsel, including myself, of the matter and told us he was going to call the jury back into the Courtroom and discuss same with them. I was present at the time of his discussion with the jury."

the presumption of innocence, the burden of proof, and the requirement that guilt must be established beyond a reasonable doubt, and the instruction I have just given you is to be considered with all other instructions in this case.

"You have commented that to this point you feel there is a lack of evidence. There is evidence. Please reconsider the evidence in this case. We stand in recess."

No objection to this instruction appears in the record to have been made before given nor at any time before the jury returned its verdict.

The appellant assigns several errors in the following order and language:

1. "Whether supplemental instructions given by a trial judge, pursuant to notification by a jury that it is unable to reach a verdict because of a lack of evidence, constitute a deprivation of the accused's right to a fair and impartial trial by jury, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution when such instructions:

a. "are *not* given with the original jury instructions but are instead given *after* the jury has entered into deliberation;

b. "are *not* reduced to writing in violation of Rules 31[2] of the W.R.Cr.P. and 51[3] of the W.R.C.P.; and

c. "are given to the jury in the absence of the accused's counsel in violation of Wyo.Stat., 7–9.2[4]

2. "Whether a comment by a trial judge to a jury that '[t]here is evidence,' incorporated into the Court's supplemental instruction to the jury, constitutes a prejudicial invasion of the province of the jury in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution.

3. "Whether the failure to make a timely objection to prejudicial and erroneous supplemental jury instruction will bar appellate review, where the instructions

---

2. Rule 31, W.R.Cr.P., provides:
"Instructions to the jury shall be given and objections thereto made at the time and in the manner provided for the giving of instructions and the making of objections thereto in the Wyoming Rules of Civil Procedure. Opportunity shall be given to make objections out of the hearing and presence of the jury. Copies of requested instructions shall be served on adverse parties."

3. Rule 51, W.R.C.P., provides:
"At any time before or during the taking of evidence, the court may give to the jury such general instructions as to the duties and functions of the court and jury, and the manner of conducting the trial, as it may deem desirable to assist the jury in performing its functions. Such instructions, exclusive of rulings which are recorded by the court reporter for inclusion in any record, shall be reduced to writing, numbered and delivered to the jury with the other instructions and shall be a part of the record in the case.
"At the close of the evidence, or at such earlier time during the trial as the court reasonably directs, any party may file writ-

ten requests that the court instruct the jury on the law as set forth in the requests. Before the argument of the case to the jury is begun, the court shall give to the jury such instructions on the law as may be necessary and same shall be in writing, numbered and signed by the judge, and shall be taken by the jury when it retires. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make any such objection out of the hearing of the jury. All instructions offered by the parties, or given by the court, shall be filed with the clerk and, with the endorsements thereon indicating the action of the court, shall be a part of the record of the cause."

4. Section 7–9.2, W.S.1957, 1975 Cum.Supp., provides generally that needy persons are entitled to be represented and attended by counsel at all stages of a criminal matter, the same as a person providing his own counsel.

have impaired the accused's rights to a fair and impartial trial."

No error relating to the guilt or innocence of the defendant is assigned.

 The 1968 Approved Draft of the American Bar Association of Standards Relating to Trial by Jury provides at page 145, as follows:

"5.4 Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

That standard, which we approve, does not require any particular language but identifies the significant points to be covered. The instruction given by the trial judge along with all other instructions in the case, at the close of all the evidence, is consistent with that high standard;[5] in fact, his instruction used the very language of the standard.[6]

This court has approved such a type of instruction being given along with other instructions delivered at the close of the evidence. *Alcala v. State,* Wyo.1971, 487 P.2d 448, 461, cert.den. 405 U.S. 997, 92 S. Ct. 1259, 31 L.Ed.2d 466, reh.den. 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823; *Elmer v. State,* Wyo.1969, 463 P.2d 14, 21, cert. den. 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82. The defendant does not complain about the instruction being given along with all other instructions. His claimed

5. There is no need for us to go into a long discussion of the justification for the ABA standard. It is adequately covered in the commentary beginning at page 146.

6. We also approve the following form of instruction taken from the commentary on this particular standard as illustrative and consistent with the standard. It is Instruction 8.11 of Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 97–98 (1961):

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

"You are not partisans. You are judges— judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

error is that after it appeared that the jury might be deadlocked, the trial judge not only repeated the essence, if not the exact text, of his initial instruction but included the following language:

"\* \* \* As you know, this is an important case to the defendant and the State. This trial has been expensive even though short. If you fail or are unable to agree, of course, there will be the necessity of choosing another jury, twelve people, no more intelligent than you are, no more impartial, or no more competent. They have [sic] the same responsibility, under the same oath, who [sic] would hear the evidence with the same attention with an equal desire to arrive at the truth.

"\* \* \* The Court requests you to deliberate further in an atmosphere of mutual deference and respect, giving due consideration to the views of your fellow jurors in the knowledge that your verdict must reflect the views of all."

■■■ The first quoted portion of the additional language is what are substantially the same words as included in an instruction given in *Alcala*, supra, and approved by this court. It should be noted that Standard 5.4(b) provides that not only may the trial judge send the jury back for further deliberations but "may *give or repeat* an instruction as provided in subsection (a)." (Emphasis added.)[7] Defendant complains that the timing and additional language are coercive. We accept the legal proposition that an instruction given at a time when it appears a jury may be deadlocked, referred to as an *Allen* type,[8] must not have a coercive impact upon the jury.

■■■ Communications from a judge to a jury are coercive when they possess the substantial propensity for prying minority

**7.** This court has never considered it reversible error to give the type of questioned instruction after the jury has retired and appeared deadlocked but in *Elmer v. State*, supra, the court, in stating that the trial judge was justified in doing so and no prejudice resulted to the defendant, hedged by adding that it did not "commend or even approve" the giving of such an instruction after the jury has been in deliberation. In that respect the case was indecisive. In *Alcala v. v. State*, supra, the instruction was given with the other instructions in the case so the question of timing was not involved. We continue to urge giving of the instruction with the instruction package. The trial judge then only needs to refer back to an instruction already given and perhaps avoid a claim of error. Since the American Bar Association study and approved standard, the law of the matter has settled down into an acceptable form of instruction lacking any coercive effect. We now can see no objection to the approved instruction being given after the jury has retired, in appropriate cases.

**8.** Instructions such as the one under discussion are referred to as of the *Allen* type because in a murder case, *Allen v. United States*, 1896, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528, 530–31, the United State Supreme Court held that it was not error to instruct a jury which had returned to the court for further instructions:

"\* \* \* that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; *that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.* \* \* \*" (Emphasis added.)

That instruction is generally in disrepute and at least controversial amongst the courts of the land because of its appeal to the minority to bow to the majority. Compare it to the before and after instructions given by the trial judge here. We do not approve of the instruction given in *Allen*. It would be unfair to tar the ABA-approved concept with the same brush.

jurors loose from beliefs they honestly have, constitute an undue intrusion into the jury's province and dilute the requirement of unanimity. *United States v. Thomas,* 1971, 146 U.S.App.D.C. 101, 449 F.2d 1177. In that case the jury was told by the trial judge that the court had a substantial backlog and "to spend another day before another jury retrying this case just doesn't make sense to me." That language was by the court considered coercive. In *Goff v. United States,* 10 Cir. 1971, 446 F.2d 623, it was held to be reversible error, as coercive, to admonish the jury that if it could not reach a verdict within the next hour or so, the court would have to declare a mistrial and set the case down for hearing again. A court cannot set a time fuse on the period of jury deliberation.

We do not have the same situation here as in *Jenkins v. United States,* 1965, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957, upon which defendant relies, where slightly more than two hours after the jury retired to deliberate, the jury sent a note to the trial judge advising that it had been unable to agree upon a verdict " 'on both counts because of insufficient evidence.' " The judge thereupon recalled the jury to the courtroom and in the course of his response, stated that, "You have got to reach a decision in this case." The Supreme Court of the United States decided that under that direction of the trial judge, the jurors were coerced into surrendering views conscientiously held.

The trial judge here with good judgment gave balance to his supplemental instruction dispatching the jury back to their quarters for further deliberations. He never for a moment let them forget that, "your verdict must reflect the views of all." His statement about the expense of the trial and trial by another jury no more intelligent, impartial, competent or in greater quest of the truth, was no more than a reminder of a fact of litigation and only an extension of what he had said in his first instruction and was not coercive.

The defendant has plucked out this latter language and attempts to condemn it.

■ Instructions must be considered as a whole and not according to isolated phrases and paragraphs. *State v. Jackson,* 1955, 75 Wyo. 13, 291 P.2d 798; *Loy v. State,* 1919, 26 Wyo. 381, 185 P. 796; *Flanders v. State,* 1916, 24 Wyo. 81, 156 P. 39, reh. den. 156 P. 1121; *State v. McClanahan,* 1973, 212 Kan. 208, 510 P.2d 153; *State v. Radabaugh,* 1970, 93 Idaho 727, 471 P.2d 582; *Franano v. United States,* 8 Cir. 1962, 310 F.2d 533, cert. den. 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694. In *United States v. Wheeler,* 10 Cir. 1971, 444 F.2d 385, it was said, "In determining the propriety of a supplemental instruction given the jury, the instructions have to be considered as a whole and the supplemental instruction examined in the light of the other instructions previously given."

■ A statement in an instruction to a deadlocked jury that the jury sitting is as competent as another is not coercive language in a supplemental instruction. *Kelley v. State,* 1971, 51 Wis.2d 641, 187 N.W. 2d 810. The trial judge's statement in *Fulwood v. United States,* 1966, 125 U.S.App. D.C. 183, 369 F.2d 960, cert. den. 387 U.S. 934, 87 S.Ct. 2058, 18 L.Ed.2d 996, that some jury sometime would have the duty to decide the case was held not to be coercive. The words, "this case must at some time be decided," as part of a supplemental instruction otherwise neutral and non-coercive, were approved in *State v. Maupin,* 1975, 42 Ohio St.2d 473, 330 N.E.2d 708.

■ We find no error in the manner, words and timing used in reminding the jury of its role. We fail to see how the part of the instruction we have discussed to this point was prejudicial to the defendant.

■ The next issue we must consider is whether the comment of the judge with respect to the evidence was prejudicial and

an invasion of the province of the jury. Just what did he say:

"You have commented to this point you feel there is a lack of evidence. There is evidence. Please reconsider the evidence in this case. * * *"

Section 1–132, W.S.1957, provides specifically that if a jury disagree, it "must be sent out again for further deliberation." Section 1–129, W.S.1957, provides that the jury may be discharged "after the jurors have been kept together until it satisfactorily appears that there is no probability of their agreeing." Section 1–128, W.S.1957, provides that after the jurors have retired "if there be a disagreement between them as to any part of the testimony, * * * the court may give its recollection as to the testimony on the points in dispute." The exact language in the jury note sent to the trial judge states, "We cannot reach a verdict * * *." Those words indicate and express disagreement. The court had instructed the jury that its verdict must be unanimous. Apparently, there was not unanimity or there would have been a verdict of guilty or not guilty returned. A deadlock situation was registered.

■ As we read his instruction, he did no more than send them to reconsider the testimony, which is evidence. He could have refreshed the memory of the jurors under the statute but the statute is not mandatory. The court may decline to refresh the collective memory of the jury and his not doing so is not ground for reversal except in a case where it is clear that an injustice had been done. *State v. Riggle*, 1956, 76 Wyo. 1, 57, 298 P.2d 349, 371, reh. den. 300 P.2d 567, cert. den. 352 U. S. 981, 77 S.Ct. 384, 1 L.Ed.2d 366. There was evidence—as we examine the record, we find 121 pages of testimony. The court merely asked the jury to reconsider that testimony, neither slanting his comment for or against guilt. It should be noted that the trial judge, in repeating his initial in-

struction, stated that each juror should give the evidence "impartial consideration." It is inconceivable how that may be considered prejudicial. If the trial judge may refresh the jury's memory, he certainly may make the less nocuous observation that there is evidence.

■ We find nothing in Rule 31, W.R.Cr.P., or Rule 51, W.R.C.P.,[9] which requires instructions given to a jury after its retirement under circumstances such as in this case to be reduced to writing and sent to the jury room. The rules refer only to those instructions given, "Before the argument of the case to the jury is begun." The giving of oral instructions, even if contrary to a rule or statute is not reversible error if the instructions are proper and do not injure the accused, especially where taken down by the court reporter or reduced to writing for the record after they are given. The main purpose in reducing instructions to writing is to give the defendant the exact language of the court in order that he may appropriately object and avail himself of any error but failure to do so may not be made a weapon of error. *State v. Carroll*, 1937, 52 Wyo. 29, 69 P.2d 542. We hold that there is no requirement that instructions given by the court, following a report by the jury that it is in disagreement, be reduced to writing and sent to the jury room; such instructions given, however, must appear in the record.

We now must consider whether the instruction was given in the absence of the defendant's counsel. The only troublesome problem in that regard is the deficient condition of the record. We take judicial notice of the fact that C. L. Bates, defendant's trial attorney, is now deceased. See Wyoming Bar Proceedings, Report of the Necrology Committee, Wyoming State Bar, XI Land and Water Law Review 333. The trial judge failed to dictate into the record the circumstances of how the note

9. Rule 51, W.R.C.P., is made applicable to criminal proceedings by Rule 31, W.R.Cr.P. *Bentley v. State,* Wyo.1972, 502 P.2d 203.

from the jury was delivered to him, what counsel were present and what transpired up to the point the court reporter picked up the record when the trial judge further instructed the jury in response to the note. The court reporter even at that point failed to record who was present when the court convened for the purpose of addressing the jury in response to its note.

Counsel for the defendant on appeal disclaims any knowledge of what took place during this blank space in the record. The county attorney was present at the time of oral argument to this court and confirmed the facts related in Ms. Stafford's affidavit set out in footnote 1 of this opinion. Any absence of counsel was not objected to in the trial court and not raised in Mr. Bates' motion for a new trial. We could probably infer that counsel was present but that is no way to approach the question when a regular procedure for implementing the record is provided by rule.

We wonder why the Attorney General failed to correct the record in the manner provided by Rule 75(d), W.R.C.P.:

"If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties, by stipulation, or the district court, either before or after the record is transmitted to the supreme court, or the supreme court, on proper suggestion or

of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the supreme court."

 No question is raised by appellant that defendant was not present at all stages of the trial proceedings, so we need not consider that matter. Because of the inadequacy of the record and the improper method of its implementation, we are assuming, arguendo, that defendant was not represented by counsel at the time the supplemental instruction was given to the jury and that there was technical error. That a defendant is entitled to be represented by counsel at all stages of the proceeding is without question.

 Following trial, Mr. Bates filed a motion for new trial, challenging the court's supplemental instruction.[10] The county and prosecuting attorney did not question that the objections to the instruction were tardy nor did the trial judge on his own motion declare any objections to the instruction untimely, but apparently sensing some irregularity, he considered them on their merits and wrote a five-page opinion in defense of his supplemental instruction. We hold that the State has waived any objection to the failure of counsel to object to the instruction, either before or immediately after it was given. Under the circumstances here, the objection was preserved by the motion for new trial.

---

10. Grounds as set out in the motion are as follows:

"(1) That the above entitled criminal case was tried to a jury on December 11, 1974 at Green River, Wyoming.

"(2) That the case was submitted to the jury at approximately 4:00 P.M., on December 11, 1974.

"(3) That the jury after deliberating for several hours informed the Court that they were having difficulty reaching an agreement.

"(4) Thereafter the Court gave the instruction set forth in Exhibit 'A' attached hereto

and made a part hereof which was misleading and prejudiced [sic] to the Defendant and deprives the Defendant of a fair trial under the Constitution of the State of Wyoming and the United States of America.

"(5) That the instruction comments on the evidence and as such is improper.

"(6) That the verdict of the jury was contrary to the evidence and the law.

"(7) That such instruction would constitute in the opinion of the movant reversible error."

The trial judge was given an opportunity to rule on the propriety of his instruction, brought to his attention before appeal to this court, so the question is properly raised on appeal. *Connor v. State,* Wyo.1975, 537 P.2d 715. Since that is the case, we cannot see how defendant was prejudiced by the absence of counsel, even if true that defendant was unrepresented during the questioned period. In that light, we have considered the merits of the arguments with respect to the instruction on the basis that it is a question that may be presented on appeal. By our ruling in this case, we are not in anywise setting aside the usual requirement of Rule 51, W.R.C.P., that, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The rule is supported by substantial case law. *Moore v. State,* Wyo.1975, 542 P.2d 109, and cases there cited; *LaFleur v. State,* Wyo.1975, 533 P.2d 309. We are simply saying that in this case it has been waived by the State and the trial court was given an opportunity to consider the objection and act upon it.

Rule 49(a), W.R.Cr.P., provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." For an error to be regarded as harmful, there must be a reasonable possibility that in the absence of the error, the verdict might have been more favorable to the defendant. *Reeder v. State,* Wyo.1973, 515 P.2d 969. We can think of no way in which the defendant was or could have been prejudiced by absence of counsel and the defendant has shown none, other than losing an opportunity to enter an objection to the instruction at the time given. That was cured by waiver of the county and prosecuting attorney and the fact that the trial judge entertained the objection on a motion for new trial and treated it as timely. The trial court could have granted the defendant a new trial "if required in the interests of justice." Rule 34, W.R.Cr.P. We agree that the interests of justice in this case did not and do not require a new trial.

There was no prejudicial error.

Affirmed.

GUTHRIE, Chief Justice (concurring).

I concur in this opinion. In my view the factual situation herein does not trigger the plain or fundamental error doctrine. This is to be applied cautiously and only in exceptional cases, and even error of constitutional dimensions does not in all cases justify reversal on this ground, *Hays v. State,* Wyo., 522 P.2d 1004, 1007, and authorities cited.

ROSE, Justice (dissenting).

In this case the defense counsel was not present when the judge commented on the evidence and reinstructed the jury. Whether the defendant was present at this time or not, the record does not disclose.[1] In this dissent, I assume defendant *was* present since the record shows him to have been present in court that day and, this being so, he is presumed to be present when the disputed statement and instruction was made and given. *Gallagher v. People,* 211 Ill. 158, 71 N.E. 842 (1904). Error dismissed 203 U.S. 600, 27 S.Ct. 779, 51 L.Ed. 334 (1906).

Assuming the presence of the defendant, it was, in my opinion, nevertheless, fundamental and thus reversible error for the trial court to reinstruct and comment upon the evidence in the absence of defense counsel since an accused is entitled to representation by counsel whenever necessary for a meaningful defense. *United States v. Wade,* 388 U.S. 218, 225, 87 S.Ct. 1926,

---

1. The Wyoming Statutes, § 1–128, W.S.1957, provide in pertinent part that when the court reinstructs the jury after it has retired, the communication must be made "in the presence of, or after notice to, the parties or their counsel."

18 L.Ed.2d 1149 (1967). An indigent accused in Wyoming is entitled to the presence of counsel at *all stages of the trial.* Section 7–9.2, W.S.1957, 1975 Cum.Supp.[2]

Since the fundamental question here is not the right of the defendant to be present, but his right to be represented by counsel at all stages of the trial, the defendant's presence is, in my judgment, irrelevant. Therefore, the many cases available dealing with the absence of defendant *and* counsel during the court's communication with and reinstruction of the jury are applicable.

There is a significant amount of law condemning reinstruction in the absence of both the defendant and his counsel. The Supreme Court's view was articulated in a civil case, *Fillipon v. Albion Vein Slate Co.,* 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919), which held that, where the jury has retired, supplemental instructions can be given only in the presence of counsel, or after notice and opportunity to be present, and it was reversible error for the judge to send a private written note to the jury to answer their questions. The Court, in *Shields v. United States,* 273 U.S.

583, 588–589, 47 S.Ct. 478, 71 L.Ed. 787 (1927), observed that the *Fillipon* rule is especially applicable to a criminal case, and it was reversible error for the judge to communicate to the jury, after the jury had retired, in the absence of defendant and his counsel.

Modern cases continue to hold that it is reversible error for the judge, in the absence of the defendant and his counsel, to communicate with the jury after it has retired for deliberations. *Ah Fook Chang v. United States,* 9 Cir. 1937, 91 F.2d 805; *United States v. Schor,* 2 Cir. 1969, 418 F. 2d 26; *United States v. Marken,* 9 Cir. 1972, 457 F.2d 186; and *Roberts v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L. Ed.2d 1 (1975).

Some courts hold that there is a presumption of prejudice associated with the judge's communication with the jury after it has retired when counsel and defendant are not present. *Rice v. United States,* 8 Cir. 1966, 356 F.2d 709, 717. In *Rice,* the trial court, in response to a question from the deliberating jury, gave an "Allen" instruction.[3] Since the presumption of

---

**2.** "§ 7–9.2. Right to attorney; cost; other rights.—(a) A needy person who is being detained by a law-enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled:

"(i) To be represented by an attorney to the same extent as a person having his own counsel is so entitled; and

\* \* \* \* \*

"(c) A needy person who is entitled to be represented by an attorney under subsection (a) of this section is entitled:

"(i) To be counseled and defended at all stages of the matter beginning with the earliest time when a person providing his own counsel would be entitled to be represented by an attorney and including revocation of probation or parole;"

**3.** If defense counsel had been present he might have wanted to have something to say about the giving of the "Allen" instruction. We said in *Elmer v. State,* Wyo., 463 P.2d 14, 21–22, reh. den. 466 P.2d 375:

" . . . Numerous cases are cited referring to or discussing various instructions

which point out to the jury the desirability and necessity of the individual jurors considering the views of the others in arriving at a verdict. Counsel designate such instructions by several names, notably the 'Allen' charge, since an instruction along that line was approved by the United States Supreme Court many years ago. *Allen v. United States,* 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528. Counsel concede that such instructions have usually been upheld both in Federal and state courts but insist that in the light of the emphasis on the preservation of constitutional rights in recent United States Supreme Court cases reconsideration should here be given to the matter. In so doing, they refer to and discuss a certain fictional moving picture and divers law review articles. While in this instance we perceive no occasion for the trial court to have given the instruction when the jury had been out less than eleven hours, including the time for meals and incidental activities unconnected with a cosideration of the cause, we are presented with nothing to show that the instruction was either unconstitutional or improper.

prejudice was not rebutted, this was found to be reversible error.

Similarly, I would hold, in the instant case, that the giving of the "Allen" charge, coupled with the judge's comment about the evidence to the jury when defense counsel was not present, constitutes prejudicial error. Prejudice for me is indicated by the fact that the jury thought there was "lack of evidence" (which may have meant insufficient evidence to support a guilty verdict), and then went on to find the defendant guilty after the reinstruction and the court's comment that "There is evidence."

It appears from an affidavit outside the record that a young lawyer who had been observing the trial as a spectator was asked by trial counsel to stand by during jury deliberations in trial counsel's absence; that this substitute attorney was present when the court was advised by the jury that it was having difficulty; and that she was present when the judge communicated with the jury. There is nothing in the record to show that this substitute counsel responded or reacted in any way to any action the judge proposed to take or did take. However, this did not serve to fulfill the defendant's constitutional right to counsel.

In *People v. Valentine,* 45 A.D.2d 1043, 358 N.Y.S.2d 175 (1974), a conviction was reversed due to the absence of counsel during the original instruction of the jury, despite the fact that there was present a substitute counsel. The court said:

"It was error for the court to have permitted trial counsel to absent himself during the charge to the jury. The defendant was harmed by the failure of counsel's substitute to request a charge, recognizing the ambiguity of evidence of flight and instructing the jury as to its weakness as an indication of guilt (*People v. Yazum,* 13 N.Y.2d 302, 304, 246 N.Y.S.2d 626, 627–628, 196 N.E.2d 263, 264)."

Whether the instruction and remarks were made in the presence of the defendant or not—they were in fact made when the defendant was required to stand alone before the Bar of Justice at a critical stage of his trial when the judge was communicating with and reinstructing the jury. He was—in my judgment—at this stage of the proceedings, denied the meaningful defense to which he was entitled under the Constitutions of the United States and Wyoming, and the Statutes of this state.

The Sixth Amendment to the United States Constitution [4] guarantees a defend-

An instruction similar to portions of the one in issue was approved by this court in *Harris v. State,* 23 Wyo. 487, 153 P. 881, 889, Ann.Cas.1917A 1201, and an identical instruction was approved in *Nicholson v. State,* 24 Wyo. 347, 157 P. 1013, 1015–1016. *Undoubtedly the trial court relied upon its propriety as it was justifed in doing, and no prejudice resulted to defendant. In so saying, we do not commend or even approve the giving of this type of instruction after the jury has been engaged in deliberation. Such would seem unnecessary since the finders of fact undoubtedly understand, if their instructions have been proper, what they are expected to do, and there would seem no occasion either to coddle or direct them further. Additionally, the singling out of any instruction over others lacks full accord with the universal principle that the instructions should be read and considered together. State v. Jackson, 75 Wyo. 13, 291 P.2d 798, 803. Although, as we*

*have indicated, the United States Supreme Court in recent decisions has declined to reverse because the instruction was given, there has throughout the Nation been a growing tendency to criticize the practice for various reasons. Judge Murrah in a recent case, United States v. Wynn, 10 Cir., 415 F.2d 135, 137, suggests that if such an instruction is given it should be incorporated with the other instructions. All this leads us to say that what little benefit to the proper administration of justice might result from the practice is far outweighed by the disadvantages.*" [Emphasis supplied]

4. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusa-

ant his right to counsel at all "critical" stages of the proceedings. *United States v. Wade,* supra. In giving interpretation to Rule 43 of the Federal Rules of Criminal Procedure, which is analogous to our § 7–9.2, where a jury inquiry was responded to by the judge when defense counsel was not present, the United States Supreme Court said in *Rogers v. United States,* supra, at page 2095 of 95 S.Ct.:

". . . Federal Rule Crim.Proc. 43 guarantees to a defendant in a criminal trial the right to be present 'at every stage of the trial including the impaneling of the jury and the return of the verdict.' Cases interpreting the Rule make it clear, if our decisions prior to the promulgation of the Rule left any doubt, that the jury's message should have been answered in open court and that petitioner's counsel should have been given an opportunity to be heard before the trial judge responded. See, e. g., *United States v. Schor,* 418 F.2d 26, 29–30 (CA2 1969); *United States v. Glick,* 463 F.2d 491, 493 (CA2 1972)."

In *United States v. Gay,* 6 Cir. 1975, 522 F.2d 429, 434–435, where the court excused jurors impaneled and sworn in the absence of the defendant and his lawyer, the court said:

"Appellant concedes that it is permissible for a trial judge to hear requests out of the presence of counsel from prospective jurors wishing to be excused from jury service. Wright, *Federal Practice and Procedure,* § 384. He insists, however, that once the jury has been selected and sworn it is error for the court to excuse a juror without 'notice to the defendant or his counsel and without explanation . . . .'

\* \* \* \* \* \*

"We hold that it was error for the District Judge to engage in discussions with members of the jury after it was impaneled and to consider requests for excuses out of the presence of the de-

fendant and without giving notice to defense counsel . . . The defendant should have an opportunity to object to requests for excuses from the jury and to make a record of the proceedings . . . ."

In my judgment the error was anything but harmless—it was fundamental. It was fundamental because the defendant was denied his constitutionally-guaranteed right to a fair trial for the reason that he was deprived of counsel at a critical stage of the proceedings.

The need for learned counsel when a jury returns to the court such a message as "We cannot reach a verdict due to the lack of evidence," is unusually imperative. Nobody can know for sure what that message means. Nor can anyone know for sure how the judge was interpreting the message when he returned the jury to its deliberations with the admonition:

". . . You have commented that to this point you feel there is a lack of evidence. There is evidence. Please reconsider the evidence in this case . . . ."

At this point the outcome of the trial, and therefore the future of the defendant, hung finely in balance. Was the jury saying that there was a "lack of evidence" to convict? And was the judge assuring the jury that there was *not* a lack of evidence to convict? What did the jury mean by "lack of evidence?" Who knows? We will never know!

Under the law I have cited in this dissent, I feel it was fundamental error to cause the defendant to stand alone during these critically important and technical proceedings without counsel and advice. His liberty and freedom were at stake at a time when the skills of his lawyer were desperately needed. He was denied these skills—I think—to his prejudice.

I would have reversed.

McCLINTOCK, J., joins in dissent of ROSE, J.

tion; to be confronted with the witnesses against him; to have compulsory process for

obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."